UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

CARDIOVASCULAR ASSOCIATES, INC.              CIVIL ACTION

VERSUS                                       NO. 07-1126

LAKEVIEW MEDICAL OFFICE BUILDING,            SECTION "C" (1)
L.L.C., ET AL

ORDER AND REASONS

This matter comes before the Court on motion for summary judgment and alternative motion for partial summary judgment filed by Lakeview Medical Building, L.L.C. ("LMOB") and motion for summary judgment filed by InSite Properties, Inc. ("InSite"). Having reviewed the record, the memoranda of counsel and the law, the Court has determined that partial summary judgment is PARTIALLY GRANTED and PARTIALLY DENIED for the following reasons.

The plaintiff, Cardiovascular Associates, L.L.C. ("CVA"), sues LMOB and InSite in this removed diversity action for breach of statutory warranty, breach of contract and fraud, seeking damages "... including, but not limited to, loss of office productivity,

1

salaries expended for personnel unable to perform their duties, loss of patient base, management fees and/or other practice income loss to CVA due to CVA's inability to occupy and use more than one half of the leased premises for the month of July 2006" because of mold remediation and repairs to leased premises.  (Petition, ¶ 10).   LMOB purchased a medical office building in January 2006 and leased space in that building to CVA pursuant to a written lease dated May 15, 2006.  The building is managed by InSite.  LMOB counterclaimed and filed a third-party demand against CVA and certain guarantors on the lease for attorney's fees and expenses incurred in connection with this suit.

The parties appear to agree that they agreed to an effective date for the lease of June 23, 2006.   It is also undisputed that at some time after the lease was signed, InSite employee Jason Ruggles ("Ruggles") noticed a small area of mold under a wallcovering in the relevant space and arranged to have the area repaired.  It is also undisputed that another InSite employee, Kim Bayer ("Bayer"), advised CVA employee Sally Kingston ("Kingston") of the area of mold discovered by Ruggles and repaired prior to CVA taking possession of the space.

There is no dispute that Kingston smelled something musty shortly after moving into the space and discovered another area of mold growth under wallpaper.  On June 26, 2006, LMOB began inspection and remediation for mold in the space.  There is

apparent agreement that mold damage discovered was extensive.

On July 5, 2006, CVA's attorney gave written notice to both defendants according to Section 12.2[1] directing LMOB to undertake mold remediation pursuant to Section 5.4[2] of the lease.  It also directed LMOB to give CVA notice of its intentions relative to remediation under Section 8[3] of the lease and its request for rent abatement.  (Rec. Doc.

---

[1]   Section 12.2 provides:
  12.2 Landlord's Default.  Landlord shall not be deemed to be in default in the performance of any obligation required to be performed by it hereunder unless and until it has failed to perform such obligation within thirty (30) days after written notice by Tenant to Landlord specifying wherein Landlord has failed to perform such obligation; provided, however, that if the nature of the Landlord's obligation is such that more than thirty (30) days are required for its performance, then Landlord shall not be deemed to be in default if it shall commence such performance within such thirty (30) day period and thereafter diligently prosecute the same to completion.

[2]   Section 5.4 provides:
  5.4 Landlord's Repairs.  Except as provided in subparagraph 5.5(b), Landlord shall maintain in good repair the Building, the Common Areas and facilities of the Building used by Tenant, the mechanical, plumbing and electrical systems of the Premises, the walls, floors, doors, windows and all structural elements of the Premises (excepting painting and repair or replacement of floor or wall coverings).  Except as otherwise specifically provided in Section 5, Landlord shall have no duty to maintain, repair, clean or service the Premises and Landlord shall not be liable for any actual, consequential or other damages, costs, liabilities or expenses with regard to maintenance, repair, cleaning or service in, about, on or of the Premises.
        Section 5.5(b) relates to tenant's repairs, and has no relevance here.

[3]   Section 8 provides:
SECTION 8. DAMAGE OR DESTRUCTION
  If the Premises are damaged by fire or other casualty (collectively "Casualty"),

31, Exh. 6). CVA's attorney advised the defendants in writing that substantial completion of te mold removal and remediation was "substantially complete" on July 28, 2006. (Rec. Doc. 31, Exh. 7). It also advised that it would consider LMOB in default of its obligations under Sections 5.4 and 12.2 if certain "punch list" items were not completed by August 5, 2006. CVA advised in this second letter that it considered the mold damage a "casualty" for purposes of its rent abatement demand under Sections 8 and 7.3(a)(1).[4] CVA continued to conduct business out of the leased space during

---

the damage shall be repaired by and at the expense of Landlord, provided such repairs can, in Landlord's opinion, be made within sixty (60) days after the occurrence of such Casualty without the payment of overtime or other premiums. If such repairs cannot, in Landlord's opinion, be made within sixty (60) days, Landlord may, at its option, make them within a reasonable time, and in such event this Lease shall continue in effect. Landlord's election to make such repairs must be evidenced by written notice to Tenant within thirty (30) days after the occurrence of the damage. If Landlord does not so elect to make such repairs which cannot be made within sixty (60) days, then either party may, by written notice to the other, cancel this Lease as of the date of the Casualty. In the event Landlord makes such repairs, then until such repairs are completed, the Rent shall be abated in proportion to the part of the Premises which is unusable by Tenant in the conduct of Tenant's practice of medicine. However, there shall be no abatement of Rent if the Casualty is due to the negligent acts or omissions of Tenant or Tenant's employees or contractors. A total destruction of the Building in which the Premises are located shall automatically terminate this Lease.

[4]      7.3 Insurance.
         (A) Property Insurance.
              (1) At all times during the Term, Tenant shall procure and maintain, at its sole expense, "all-risk" property insurance, for damage or other loss caused by fire or other casualty or cause including, but not limited to, vandalism and

remediation and remains a tenant there.

**LMOB MOTION**

LMOB seeks summary judgment on three grounds: (1) LMOB did not breach any provision of the lease;[5] (2) it can not be held liable for fraud because it had no knowledge of the mold subsequently discovered by CVA after it took possession; and (3) the plaintiff is not entitled to recovery for consequential damages or lost profits under the express terms of the lease. LMOB's motion relies primarily on two provisions of the lease. It argues that Section 5.4 provides its responsibilities to maintain the premises. It also relies on Section 12.2 of the lease as providing it a "safe harbor" period for repairs. LMOB claims that consequential damages are not available under Section 5.4 and

---

malicious mischief, theft, water damage of any type, including sprinkler leakage, bursting of pipes, explosion, in an amount of not less than one hundred percent (100%) of the replacement cost covering (a) all alterations made by or for Tenant in the Premises; and (b) Tenant's trade fixtures, equipment and other personal property from time to time situated in the Premises. The proceeds of such insurance shall be used for the repair or replacement of the property so insured, except that if not so applied or if this Lease is terminated following a casualty, the proceeds applicable to the leasehold improvements shall be paid to Landlord and the proceeds applicable to Tenant's personal property shall be paid to Tenant.

[5] This first argument is not an issue. "CVA does not claim that LMOB breached the lease by virtue of the sufficiency, or lack thereof, of the repairs made, nor the timeliness of the repairs," but seeks abatement of the rent and lost profits during the repair period. (Rec. Doc. 40, p. 4).

Section 7.4.[6]

    CVA opposes the motion with the argument that LMOB violated its statutory warranty that the leased premises be suitable for the purposes for which they were leased and free from vices and defects because of the mold, and that LMOB knew or should have known that the mold was there. Its warranty claims are based on La. Civ. Code arts. 2668[7], 2696[8], and 2697[9]. It also maintains that it has not waived these

---

[6]     Section 7.4 provides:
  7.4 <u>Waiver of Liability</u>.  Neither Landlord nor its agents shall be liable for any damage to property entrusted to employees of the Building, nor for loss of or damage to any property by theft or otherwise, nor for any injury or damage to persons or property resulting from fire, explosion, falling plaster, steam, gas, electricity, water or rain which may leak from any part of the Building or from the pipes, appliances or plumbing works therein or from the roof, street or subsurface, or from any other place or resulting from dampness or any other cause whatsoever, unless directly and entirely caused by and due to the gross negligence of Landlord.  Tenant shall give prompt notice to Landlord in case of fire or accidents in the Premises or in the Building or of defects therein or in the fixtures or equipment.  Tenant hereby acknowledges that Landlord shall not be liable for any interruption to Tenant's business for any cause whatsoever, and that Tenant shall obtain Business Interruption Insurance coverage should Tenant desire to provide coverage for such risk.

[7]     Article 2668 provides in relevant part:
  Lease is a synallagmatic contract by which one party, the lessor, binds himself to give to the other party, the lessee, the use and enjoyment of a thing for a term in exchange for a rent that the lessee binds himself to pay.

[8]     Article 2696 provides:
  The lessor warrants the lessee that the thing is suitable for the purpose for which it was leased and that it is free of vices or defects that prevent its use for the

warranties under La. Civ. Code art. 2699[10] under the language of the lease and because CVA did not know about the mold or its pervasiveness until after occupancy. CVA argues that LMOB breached Section 8 of the lease and failed to abate its rent as provided by that section. It also alleges fraud under La. Civ. Code art. 1953 based LMOB's action and inaction.[11] The plaintiff claims entitlement to the damages sought under the express

---

    purpose for which it was leased and that it is free of vices or defects that prevent its use for that purpose.
    This warranty also extends to vices or defects that arise after the delivery of the thing and are not attributable to the fault of the lessee.

[9]    Article 2697 provides:
  The warranty provided in the preceding Article also encompasses vices or defects that are not known to the lessor.
  However, if the lessee knows of such vices or defects and fails to notify the lessor, the lessee's recovery for breach of warranty may be reduced accordingly.

[10]    Article 2699 provides:
  The Warranty provided in the preceding Articles may be waived, but only by clear and unambiguous language that is brought to the attention of the lessee.
  Nevertheless, a waiver of warranty is ineffective:
  (1) To the extent it pertains to vices or defects of which the lessee did not know and the lessor knew or should have known;
  (2) To the extent it is contrary to the provisions of Article 2004; or
  (3) In a residential or consumer lease, to the extent it purports to waive the warranty for vices or defects that seriously affect health or safety.
    In turn, La. Civ. Code art. 2004 provides in relevant part:
  Any clause is null that, in advance, excludes or limits the liability of one party for intentional or gross fault that causes damage to the other party.

[11]    Article 1953 provides:
  Fraud is a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or

provisions of the lease.

CVA offers the affidavits of two former workers for Holladay Properties and its successor InSite. The affidavit of Dennis DeCorte ("DeCorte"), the building engineer from 2005 to July 2007, states that DeCorte discovered mold in some walls in 2005, prior to May 15, 2006, that he replaced a portion of a wall in what was to become CVA's space, that he was unable to determine the source of the mold. DeCorte also states that he recommended to Ruggles that he investigate further to determine the source of the mold and was advised by Ruggles not to perform further investigation at some time, apparently in 2005, prior to May 15, 2006. He also claims to have treated several walls of the premises at Ruggles direction when the outgoing tenant left at some undisclosed time. DeCorte states that he brought the additional problems to the attention of Ruggles and Bayer prior to the final walkthrough on June 23, 2006, and treated certain areas with bleach at their direction. DeCorte also states that he was told by Bayer "and/or" Ruggles not to enter CVA's premises or "even mention the word 'mold'" to any tenant in the building, and that he was discharged by Ruggles and InSite in July 2007. (Rec. Doc. 40, Exh. A). The affidavit of Jesse Hernandez ("Hernandez"), former chief building engineer for Holladay and InSite between 2005 and August 2007, restates relevant points

---

inconvenience to the other. Fraud may also result from silence or inaction.

of the DeCorte affidavit and states that "he knows that Kim Bayer and/or Jason Ruggles were aware of that mold" during the final walkthrough in June 2006.  (Rec. Doc. 40, Exh. B).

**Fraud claim**

LMOB's first argues in reply that the knowledge of those associated with CVA is determinative of the degree of knowledge that LMOB for purposes of the plaintiff's fraud claim.   The Court fails to understand the relevance of this argument.  It next argues that the affidavits of DeCorte and Hernandez offered in support of the plaintiff's opposition involve relevant activity by the two affiants that pre-dates LMOB's purchase of the building in January 2006.  "That Mr. Ruggles did not take Mr. DeCorte's suggestion to remove all wall coverings in the entire building – even though there were no  outward signs of mold growth –  is nothing more than an "I told you so," from a disgruntled former employee."  (Rec. Doc. 48, pp. 3-4).  These arguments may raise credibility issues, but are not appropriate to resolve on summary judgment.  Genuine issues of material fact exist as to the extent of LMOB's knowledge of the degree of mold contamination in the walls of the premises and its response to that knowledge for purposes of summary judgment.

**Sections 12.2 and 8**

LMOB argues that the invocation of Sections 5.4 and 12.2  by CVA's attorney in

his July 5, 2006, letter precludes any argument by CVA that those sections do not apply. The Court notes that the same letter also invokes Section 8 of the lease, and specifically asks for abatement of rent under that section. (Rec. Doc. 31, Exh. 6).

LMOB replies that Section 8 does not apply because the mold problem does not constitute a "casualty" for its purposes and that, even if it is a casualty, it must be read in conjunction with Section 12.2 so as to read that "...LMOB was only required to abate rent when repairs from a 'Fire or Other Casualty' required more than 60 days to repair." (Rec. Doc. 48, p. 7). The Court is persuaded by CVA's observation that the meaning of "casualty" is affected by the fact that it is defined in Section 7.3(A)(1) to specifically include "water damage of any type." Summary judgment on this issue is not appropriate.

**Lost profits and consequential damages**

Finally, the Court will treat CVA's characterization of the waiver of business interruption damages in Section 7.4 as a waiver of warranty under Louisiana law since it serves to limit LMOB's liability for the claimed statutory violations. Section 7.4 is part of the lease entitled "DAMAGE TO PROPERTY– INJURY TO PERSONS; INSURANCE; INDEMNIFICATION." The inclusion of the waiver for this one item of damage is clear and is accompanied by the CVA's obligation to procure appropriate insurance to cover such a risk. Water-related and dampness damage "directly and entirely caused by and

10

due to the gross negligence of Landlord" may be otherwise excluded from the waiver in the beginning of this section.  The fact that LMOB's duty to repair and liability for related consequential damages are limited by Section 5.4 is distinct from the non-recoverability of business interruption losses "for any cause whatsoever" under  the "Waiver of Liability" Section 7.4.

The Court finds, however, that this waiver of liability does not extend beyond business interruption losses under the clear language of Section 7.4 for purposes of summary judgment.   Exactly what those business interruption losses are, and how they relate to consequential damages that may otherwise be recoverable, remain issues for trial.

Finally, the Court finds that both parties are sophisticated consumers and that the plaintiff is capable of waiving its statutory rights.  Kingston, who signed the lease on behalf of CVA, testified in deposition that she was aware of the provision and did not have objection to it at the time it was signed. (Rec. Doc. 31, Exh. 5).  One of the doctors affiliated with CVA testified in deposition that its counsel reviewed the lease prior to its execution. (Rec. Doc. 31, Exh. 10).   The Court finds that these circumstances are equivalent to having the waiver language brought to the attention of the plaintiff.  *Traina v. Nationsbank of Texas, N.A.*, 2001 WL 1031773 (E.D.La.)(fact that waiver language not orally discussed does not bar its enforcement given clear terms of lease and financial

acumen and experience of plaintiff).

**INSITE'S MOTION**

Relying on many of the same facts relevant to LMOB's motion, InSite moves for summary judgment on two claims made by CVA: breach of lease and fraud. As to the breach of lease claim, it argues that it is not a signatory to the lease. CVA agrees that its breach of contract claim is "attenuated," but nonetheless seizes on CVA's contractual obligation to pay "Operating Costs" and LMOB's obligations to maintain and repair the premises to argue that LMOB's "assignment" of obligations to InSite precludes summary judgment on CVA's breach of contract claims against InSite. The Court is not persuaded by this argument.

InSite next argues that it can not be liable as agent of LMOB because it is a disclosed agent and is not personally liable under La. Civ. Code art. 3016 for any contractual or statutory obligations owed by LMOB to CVA.[12] CVA admits that it has no evidence as to the authority given InSite by LMOB, but that deliberately concealing extensive mold contamination in the premises "certainly exceeds an agent's authority." (Rec. Doc. 37, p. 7). In the absence of evidence to support its claim, CVA's against InSite

---

[12] Article 3016 provides:
 A mandatary who contracts in the name of the principal within the limits of his authority does not bind himself personally for the performance of the contract.

for breach of contract is subject to dismissal.

Next, InSite seeks dismissal of CVA's claim of fraud against it. The parties agree that in order to prove fraud, the plaintiff must show: (1) a misrepresentation of a material fact; (2) that the misrepresentation was made with the intent to deceive; and (3) that the misrepresentation caused justifiable reliance with resulting injury. *Newport Ltd. v. Sears, Roebuck & Co.*, 6 F.3d 1058, 1068 (5th Cir. 1993). InSite argues that it is undisputed that Kingston was aware of the repair to one section of mold damage prior to taking possession of the premises. It is knowledge of the extensiveness of the mold contamination that is at issue here, however. Again, the affidavits of DeCorte and Hernandez serve to raise genuine issues of material fact as to the knowledge and intent of InSite for purposes of summary judgment on the fraud claim.[13]

Finally, the Court is unable to read the ruling of *Smith v. State Farm Insurance Companies*, 869 So.2d 909 (La. App. 4th Cir. 2004) as extensively as InSite argues. The defendants here are being sued for fraud, not negligence. The Court's reading of the opinion in *Smith, supra,* reveals no mention of fraud whatsoever. Whether or not InSite owed a duty for negligence purposes is not relevant here.

Accordingly,

---

[13] Again, the Court does not understand the argued relevance of the alleged lack of knowledge on the part of those affiliated with CVA.

IT IS ORDERED that the motion for summary judgment and alternative motion for partial summary judgment filed by Lakeview Medical Building, L.L.C., is PARTIALLY GRANTED as to breach of lease claims except for abatement of rents, and as to the non-recoverability of business interruption losses and PARTIALLY DENIED as to the fraud and breach of lease abatement of rents claims.  (Rec. Doc. 31).

IT IS FURTHER ORDERED that the motion for summary judgment filed by Insite Properties, Inc. is  PARTIALLY GRANTED as to the breach of lease claims and PARTIALLY DENIED as to the fraud claims.   (Rec. Doc. 32).

New Orleans, Louisiana, this 12th day of May, 2008.

_____
HELEN G. BERRIGAN
UNITED STATES DISTRICT JUDGE